IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Victor Costellos Penny, #316219, | ) | Civil Action No.:2:15-cv-04817-PMD-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Joseph McFadden, | ) | |
| | ) | |
| Respondent. | ) | |

The Petitioner, a state prisoner proceeding *pro se*, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment (Dkt. No. 12; *see also* Dkt. No. 11) and Petitioner's Motion for Declaratory Judgment (Dkt. No. 17).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner filed the instant action on or about November 30, 2015. (*See generally* Dkt. No. 1.) On March 28, 2016, Respondent filed a Motion for Summary Judgment. (Dkt. No. 12; *see also* Dkt. No. 11.) By order filed March 29, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 13.) On or about May 2, 2016, Petitioner filed a Response in Opposition to the Motion for Summary Judgment. (Dkt. No. 15.) On or about June 1, 2016, Petitioner filed a Motion for Declaratory Judgment. (Dkt. No. 17.) Respondent filed a Response in Opposition to the Motion for Declaratory Judgment, to which Petitioner filed a Reply. (Dkt. No. 18; Dkt. No. 19.)

## PROCEDURAL HISTORY

The Petitioner is currently confined within the South Carolina Department of Corrections ("SCDC") at Lieber Correctional Institution. In November of 2004, the Newberry County Grand Jury indicted Petitioner for conspiracy, robbery, and murder. (Dkt. No. 11-8 at 8-9 of 20.) Petitioner was

represented by William Pyatt, Esquire. (*See* R. at 1.) On June 26, 2006, Petitioner pled guilty to murder and robbery before the Honorable Casey L. Manning. (R. at 1-29.) On June 27, 2006, after Petitioner's co-defendant entered a plea, Judge Manning sentenced Petitioner to thirty years on the conviction for murder and fifteen years, consecutive, on the conviction for robbery. (R. at 29-36.)

Petitioner did not file a direct appeal, but filed an application for post-conviction relief ("PCR") on December 29, 2006. (R. at 38-44.) The following questions and answers appeared in his PCR application (verbatim):

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
> (a) Ineffective Counsel/Conflict of interest (attorney)
> (b) Illegal Sentence
> (c) Guilty Plea not intelligently made
>
> 11. State concisely and in the same order the facts which support each of the grounds set out in (10):
>
> (a) Counsel did not advise accurately concerning the facts.
> (b) I was given two consecutive sentences for one continuous act.
> (c) I did not see discovery evidence and other documents.

(R. at 40.)

On April 2, 2008, an evidentiary hearing was held before the Honorable J. Ernest Kinard, Jr. (R. at 50-76.) Petitioner was present and represented by M. Rita Metts, Esquire. (*See* R. at 50.) In an order dated May 13, 2008, Judge Kinard denied the application for post-conviction relief and dismissed the petition. (R. at 81-87.)

Petitioner did not seek appellate review of Judge Kinard's order, but on August 18, 2009, Petitioner filed a second application for PCR. (R. at 88-93.) The following questions and answers appeared in his second PCR application (verbatim):

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
> My P.C.R. counsel failed to file an appeal for my writ and I did not knowingly waived my right to appeal.

> 11. State concisely and in the same order the facts which support each of the grounds set out in (10):
>
> Each Applicant is entitle by Rules of Civil Procedure 71.1(e) and the statutory provision 17-27-100 a Right to Appellate Review from their Postconviction Relief Application and Hearing.

(R. at 89-90.)

On April 14, 2011, an evidentiary hearing was held before the Honorable Eugene C. Griffith, Jr. (R. at 99-119.) Petitioner was present and represented by Robert A. Russo, Esquire. (*See* R. at 99.) In an order dated August 1, 2011, Judge Griffith denied the application for post-conviction relief and dismissed the petition. (R. at 120-25.)

Petitioner appealed Judge Griffith's order, and on July 31, 2012, through Attorney Breen Richard Stevens of the South Carolina Commission on Indigent Defense, he filed a Petition for Writ of Certiorari. (Dkt. No. 11-2.) Therein, Petitioner raised the following issue:

> Whether Petitioner knowingly and intelligently waived his right to appellate review of the first Order of Dismissal where PCR Counsel stated she did not speak with Petitioner after the hearing, where PCR Counsel could not confirm that Petitioner received a letter she mailed regarding the dismissal of his case, and where PCR Counsel stated on the record before the first PCR Court that she would file a notice of intent to appeal once she received the order?

(Dkt. No. 11-2 at 3 of 15.)

In an order filed on August 15, 2014, the South Carolina Court of Appeals granted the petition for writ of certiorari. (Dkt. No. 11-3.) The court stated, *inter alia*,

> Because there is no probative evidence to support the finding that Petitioner was not entitled to a belated review of his first PCR application, we grant the petition for a writ of certiorari, dispense with further briefing, and direct Petitioner to serve and file his *Austin* petition addressing the appealable issues from his first PCR hearing pursuant to *King v. State*, 308 S.C. 348, 349, 417 S.E.2d 868, 869 (1992) (outlining the procedure when the PCR court denies *Austin* review).

(Dkt. No. 11-3 at 2 of 3.)[1]

---

[1] *See Austin v. State*, 305 S.C. 453, 409 S.E.2d 395 (1991).

On December 15, 2014, Petitioner, through Attorney Benjamin John Tripp of the South Carolina Commission on Indigent Defense, filed a *Johnson* Petition for Writ of Certiorari Pursuant to *Austin v. State*. (Dkt. No. 11-4.)[2] Therein, Petitioner raised the following issue:

> Did the record support the PCR court's conclusion that Petitioner voluntarily pled guilty where Petitioner testified that plea counsel advised him that "the State had me beat," and "I didn't stand a chance" and that he did not want to take Petitioner to trial; and where when asked about discussing the possibility of trial with Petitioner, plea counsel only stated, "Well, I'm almost sure I told him if he went to trial and he's found not guilty he would be a free man"?

(Dkt. No. 11-4 at 3 of 10.) Mr. Tripp also filed a petition to be relieved as counsel. (Dkt. No. 11-4 at 9 of 10.) Petitioner filed a *pro se* response to the *Johnson* petition, wherein he raised the following issue: "The record does not support the PCR judge's finding that plea [sic] Petitioner's plea was knowing and voluntary." (Dkt. No. 11-5 at 2 of 11.)

In an order filed July 14, 2015, the South Carolina Court of Appeals denied the petition for a writ of certiorari and granted counsel's request to withdraw. (Dkt. No. 11-6.) The matter was remitted to the lower court on July 31, 2015. (Dkt. No. 11-7.)

On November 12, 2015, Petitioner filed a third application for PCR. (Dkt. No. 11-8 at 1-7 of 20.) The following questions and answers appeared in his third PCR application (verbatim):

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
> Fraud upon the Court under Rule 60(b) a preponderance of the evidence under Rule 71.1(E)
>
> 11. State concisely and in the same order the facts which support each of the grounds set out in (10):
>
> Judge Ernest Kinard Jr. made an erroneous ruling dismissing applicant's application on the finding of facts

---

[2]*See Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

(Dkt. No. 11-8 at 2-3 of 20.)[3]

Shortly after filing his third application for PCR, Petitioner filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

> **GROUND ONE**: Involuntary Guilty
> **Supporting facts**: See Attachments. Petitioner was misinformed in regards to the State's evidence and by this information, Petitioner plea was induced.
>
> **GROUND TWO**: Failure to prepare, investigate, review case. Ineffective assistance of counsel.
> **Supporting facts**: Although plea counsel testified he reviewed discovery with Petitioner, counsel knew no pertinent information about Petitioner's case.

(Dkt. No. 1 at 5-7 of 15.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as

---

[3]In his Motion for Summary Judgment filed on March 28, 2016, Respondent asserts this action is still pending but "will likely be barred as successive in state court." (Dkt. No. 11 at 7 of 30.) According to the Newberry County Eighth Judicial Circuit Public Index, Petitioner's third PCR action remains pending. See http://publicindex.sccourts.org/newberry/publicindex/.

amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 12; Dkt. No. 11.) Additionally, Petitioner filed a Motion for Declaratory Judgment. (Dkt. No. 17.) Before turning to the merits of the motions, the undersigned will briefly review the facts of the case.

Petitioner pled guilty to murder and robbery before the Honorable Casey L. Manning on June 26, 2006. (R. at 1-29.) During the plea hearing, the solicitor summarized the facts; counsel indicated that the solicitor "correctly conveyed [Petitioner's] version of what happened." (R. at 20-25.) On August 4, 2004, a witness who worked for Meals on Wheels called police after finding Mr. Henry Dewalt laying on the floor in his home "with a large amount of blood around him [and] what appeared to be wounds to his neck where his throat was cut." (R. at 21.) During the course of the investigation, Petitioner and his co-defendant Cedric Culbreath "were identified as suspects or were identified as being in the area on the evening of August 3rd," and it appeared that Mr. Dewalt was

killed on late August 3 or in the early morning hours of August 4. (R. at 22.) Petitioner's co-defendant, Cedric Culbreath, gave a statement indicating that he and Petitioner went to Mr. Dewalt's home on the incident date. (R. at 22.) According to Culbreath, first he tried to go in, stating that he needed to use the telephone, but the victim, Mr. Dewalt, would not let him inside. (R. at 22.) At that point, Petitioner went to the door, and, because Petitioner was the victim's great grandson, the victim let Petitioner and Culbreath inside. (R. at 22-23.) After a few minutes inside the victim's apartment, Petitioner and Culbreath began to start taking money from the victim. (R. at 23.) The solicitor explained to Judge Manning: "You'll notice on the pictures there's money hanging all over this apartment. [Mr. Dewalt had] money hanging on the walls, money hanging from plants, there's just money hanging all over the apartment." (R. at 23.)

The solicitor stated that during the course of the two taking his money, Mr. Dewalt "started going to the back bedroom where he kept his gun." (R. at 23.) To keep him from getting his gun, Petitioner and Culbreath tackled Mr. Dewalt and put a pillow over his head until he went unconscious. (R. at 23.) Petitioner and Culbreath continued taking money while the victim was unconscious. (R. at 23.) The solicitor acknowledged that, at this point in the version of the events, Petitioner's statement differed from Culbreath's statement. (R. at 24.) Petitioner "stated that while he was back in the back bedroom Mr. Culbreath cut Mr. Dewalt's throat." (R. at 24.) Mr. Culbreath said that "as they were getting ready to leave [Petitioner] sa[id] basically I got to kill him, he knows who I am, he's going to tell my family, goes to the kitchen, gets a knife and cuts the [victim's] throat." (R. at 24.)

Having reviewed the facts as set forth at the plea hearing, the undersigned turns to Petitioner's grounds for relief and his Motion for Declaratory Judgment (Dkt. No. 17). For the reasons set forth herein, the undersigned recommends granting Respondent's Motion for Summary Judgment (Dkt. No. 12) and denying Petitioner's Motion for Declaratory Judgment (Dkt. No. 17).

7

**A.**    **Ground One**

Petitioner contends in Ground One that his guilty plea was involuntary. (Dkt. No. 1 at 5 of 15.) He asserts that his plea was "induced" because he was "misinformed in regards to the State's evidence" against him. (*Id*.) Petitioner states his guilty plea was involuntary due to ineffective assistance of counsel "because his court-appointed attorney supplied him with information about pertinent evidence that was erroneous." (Dkt. No. 1-1 at 1 of 12.) According to Petitioner, his counsel told him "that the State had his Co-Defendant's statement, clothing and the knife (murder weapon)." (*Id*.) Petitioner states,

> Due to this evidence, Plea Counsel advised Petitioner that it would be in his best interest to plea. Under the impression that the State had overwhelming evidence against him, Petitioner did plea. Petitioner testified that seven months after his initial plea, he received a copy of his Rule 5. And upon review of his discovery material, he found that the State did not have the clothing or knife that plea counsel advised him of prior to pleading guilty.

(*Id*. (citations omitted).) Petitioner asserts that "Plea Counsel misinformed and erroneously advised Petitioner which induced Petitioner's plea because Petitioner testified that he felt misled and that is why he pled guilty." (Dkt. No. 1-1 at 1-2 of 12.) Petitioner further asserts that "trial was an option" due to the "State's lack of evidence." (*Id*. at 2 of 12.) He contends his guilty plea was not knowingly, voluntarily, or intelligently made because his plea "was induced by misinformation and erroneous advice" where Petitioner testified that "had he been apprised of every piece of the State's evidence, he would not have pled guilty and instead insisted on going to trial." (*Id*.)

The PCR court addressed Petitioner's claim that his guilty plea was involuntary due to the ineffective assistance of counsel. (R. at 83-86.) The court stated, *inter alia*,

> To find a guilty plea is voluntarily and knowingly entered into, the record must establish the applicant had a full understanding of the consequences of his plea and the charges against him. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969); Dover v. State, 304 S.C. 433, 405 S.E.2d 391 (1991). In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing. Harris v. Leeke, 282 S.C. 131, 318 S.E.2d 360 (1984).
> The transcript reflects that the guilty plea was knowingly and voluntarily entered with a full understanding of the charges and consequences of the plea.

8

Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, [an Applicant's] right to contest the validity of such a plea is usually, but not invariably, foreclosed. Blackledge v. Allison, 431 U.S. 63 (1977). Statements made during a guilty plea should be considered conclusively, unless an [Applicant] presents valid reasons why he should be allowed to depart from the truth of his statements. Crawford v. U.S., 519 F.2d 347 (4th Cir. 1975) *overruled on other grounds by* U.S. v. Whitley, 759 F.2d 327 (4th Cir. 1985). This Court finds that Applicant presented no reasons to show that he should be allowed to depart from the truth of the statements he made during his guilty plea hearing.

An Applicant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing that trial counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for trial counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial, Roscoe v. State, 345 S.C. 16, 546 S.E.2d 417 (2001); Richardson v. State, 310 S.C. 360, 426 S.E.2d 795 (1993). Given Applicant's burden of proof and the analysis to be applied to this claim, the Applicant's claim of involuntary plea is, in essence, a claim of ineffective assistance of counsel, and it will be treated as such.

Applicant testified that he felt prejudiced because there was no physical evidence linking him to the crime and because there was no murder weapon. He also testified that he pled guilty because defense counsel told him the State had overwhelming evidence and because he didn't have a chance. Applicant said he didn't think his statement was voluntary because he made it when he was a juvenile and that it should have been thrown out. Applicant further stated that defense counsel didn't discuss the case with him and that he originally wanted Mr. Verner to continue to represent him, not his co-defendant. Applicant did testify that he remembered his guilty plea, telling the judge he was guilty of the crime, was satisfied with defense counsel, and was pleading freely and voluntarily.

Defense counsel testified that Applicant admitted to being at the scene of the crime but that the case was really finger pointing by the co-defendant and the Applicant as to who really killed the victim. Mr. Verner, the public defender who was originally appointed, had a conflict regarding the Applicant's case, so defense counsel was appointed. Defense counsel said that he had a meeting at the city jail and showed the Applicant the discovery and that he had another meeting with the Applicant, his mother, and his sister. He said the most damaging evidence was the statement of the co-defendant. Defense counsel also said that he talked about the voluntariness of the applicant's statement and that the Applicant said law enforcement didn't force him to write it.

Trial counsel was not ineffective. He reviewed Discovery with the Applicant and discussed the possibility of attacking the statement made by the Applicant, to realize that the statement was voluntary. Applicant admitted at the plea that he was pleading freely and voluntarily and there is nothing to indicate that defense counsel forced him to plead guilty. Counsel advised the Applicant that the evidence was not in his favor, which is well within counsel's accord to do so. It was Applicant's choice to plead.

9

This Court finds in regards to the allegations of ineffective assistance of counsel and involuntary guilty plea, the Applicant's testimony is not credible, while also finding trial counsel's testimony is credible. This Court further finds trial counsel adequately conferred with the Applicant, conducted a proper investigation, was thoroughly competent in [his] representation, and that trial counsel's conduct does not fall below the objective standard of reasonableness. Further, this Court also finds that the record in this case fully demonstrates that the Applicant understood the nature of his plea, and that his plea was made freely and voluntarily.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test–that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant.

This Court also finds the Applicant has failed to prove the second prong of Strickland–that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier supra. Therefore, this allegation is denied.

(R. at 83-86.)

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985).

In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.* While *Strickland* itself is a deferential standard, when both § 2254(d) and *Strickland* apply, "review is doubly" deferential.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The two-part test enunciated in *Strickland* applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in *Strickland*], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The undersigned recommends granting summary judgment to Respondent as to Ground One. Judge Manning went over the charges to which Petitioner was pleading guilty, and Petitioner indicated that he understood and wished to plead guilty to those two charges. (R. at 8-11.) Petitioner acknowledged that by pleading guilty to common law robbery, he could go to jail for fifteen years, but he still wished to plead guilty. (R. at 9-10.) He further acknowledged that he wished to plead guilty to the charge of murder, knowing that he could go to jail for not less than thirty years but up to life. (R. 10-11.) Petitioner stated that he still wished to plead guilty when Judge Manning advised him that he would have to serve at least 85 percent of the sentence before being eligible for parole. (R. at 11.) Petitioner still wished to plead guilty when Judge Manning advised him that he could receive consecutive sentences. (R. at 13-14.)

Judge Manning went over the rights Petitioner was waiving by pleading guilty; Petitioner indicated that he understood those rights and still wished to plead guilty. (R. at 11-14.) The following exchange also occurred during Petitioner's plea hearing:

> THE COURT: You realize, Mr. Penny, that when you plead guilty you admit the truth of the allegation contained in this indictment against you, you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: I can tell you that you, sir, because you may have some defenses to these charges, Mr. Penny, of course, I have no way of knowing that but you need to realize that by pleading guilty you waive your right–by pleading guilty here today you

11

give up any defenses you may have, you might have some defenses, I don't know, but by pleading guilty today if you had any you [are] giving them up, you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Additionally, I tell you that, Mr. Penny, because when you were arrested by the Newberry County Sheriff's Department you may have given–was it the sheriff's department?

MR. HAMMAKS: Police department.

THE COURT: Newberry Police Department I'm sorry, when you were arrested by the Newberry Police Department you may have given some type of incriminating statement that is made some admission or confession about your guilt. You need to realize that by pleading guilty here today you waive your right [to] later on challenge or contest that you gave any statements whether or not they were taken or obtained from you freely and voluntarily in accordance with your constitutional rights, do you understand []that[?]

THE DEFENDANT: Yes, sir.

THE COURT: Now, Mr. Penny, I'll ask you once again, did you commit these offenses?

THE DEFENDANT: Yes, sir.

THE COURT: So once again now, Mr. Penny, you're telling me you're pleading guilty to Indictment 2004-3--I'm sorry 2004-435 count two common law robbery because you did, in fact, here in Newberry County along with Cedric Culbreath with means of force and intimidation steal some money from Henry Leroy Dewalt?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: And additionally, Mr. Penny, in connection with count three of this indictment murder, you're telling me once again you're pleading guilty to think [sic] charge, are you not, sir, because you did, in fact, here in Newberry County along with Cedric Culbreath actually you killed Henry Leroy Dewalt by means of breaking his neck and cutting his throat and he died as a proximate result of those injuries. You're pleading guilty to murder are you not, Mr. Penny, but you are guilty of murder, is that correct, sir?

THE DEFENDANT: Yes, sir.

(R. at 14-16.)

Judge Manning asked Petitioner if anyone promised him anything in order to get him to plead guilty; Petitioner said no. (R. at 17.) Judge Manning asked Petitioner if anyone threatened him or used force to get him to plead guilty; Petitioner said no. (R. at 17.) Judge Manning asked Petitioner if anyone used any pressure or intimidation to get him to plead guilty; Petitioner said no. (R. at 17.) Petitioner stated that he was pleading guilty of his own free will and accord, and he indicated he was satisfied with Mr. Pyatt's representation. (R. at 17.)

In *Boykin v. Alabama*, 395 U.S. 238 (1969), the Supreme Court held that in order to be valid, a guilty plea must be entered voluntarily and intelligently. *Boykin*, 395 U.S. at 242-43. The Court stated that it could not "presume a waiver" of the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers "from a silent record." *Id.* at 243. "A valid guilty plea requires the defendant to have 'a full understanding of the charges against him and the possible consequences of his plea.'" *Meyer v. Branker*, 506 F.3d 358, 366 (4th Cir. 2007) (quoting *Brady v. United States*, 397 U.S. 742, 749 n.6 (1970)). A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citations omitted).

In the case *sub judice*, Petitioner's guilty plea colloquy indicates he had a full understanding of the charges against him as well as the consequences of his plea. The state court's conclusion that Petitioner's plea was freely and voluntarily entered is not contrary to, or an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *see also Doe v. Woodford*, 508 F.3d 563, 572 (9th Cir. 2007) (rejecting involuntary plea argument where the petitioner "participated in a thorough plea colloquy, in which he answered in the affirmative that his plea was voluntary under the circumstances and, specifically, answered in the affirmative when asked if he had had enough time to discuss the plea with his attorneys"); *United States v. Solomon*, 106 F. App'x 170, 171 (4th Cir. 2004); *United States v. Robinson*, 82 F. App'x 322, 323 (4th Cir. 2003) ("Robinson's plea colloquy reveals that his plea was

knowingly and voluntarily entered into."); *United States v. DeFusco*, 949 F.2d 114, 119-20 (4th Cir. 1991).

Petitioner contends his guilty plea was not knowing and voluntary because counsel told him the State had the murder weapon and clothing, when in fact the State did not have those items. Petitioner testified at his PCR hearing that he repeatedly asked counsel for the discovery in his case, but Petitioner did not receive it until six or seven months after he was sentenced. (R. at 53-54.) Petitioner testified that once he received the discovery materials, he realized "that there was no physical evidence to link [him] to this crime other than the statement that [his] Co-Defendant said." (R. at 54-55.) Petitioner later clarified that there were two statements: Petitioner also gave a statement wherein he placed himself at the scene of the crime. (R. at 56.) Petitioner further testified as follows:

> I feel that if I would have had my motion of discovery at the time I was incarcerated at Newberry County Detention Center I would not have pled guilty to murder or common law robbery. And that is showing–proving how Mr. Pyatt was ineffective towards my case, because I sat in the county for 22 months to be exact and never seen any documents, meeting, or showing anything about my case.

(R. at 60.)

Counsel testified at the PCR hearing that Petitioner admitted to being at the scene of the crime; counsel stated, "[A]t no time did [Petitioner] say he wasn't there." (R. at 64-65.) Counsel further testified that once Petitioner and his co-defendant got inside the victim's apartment is "where the stories are getting in conflict in terms of apparently someone–one person held him down and one person cut his throat with the knife." (R. at 64.) According to counsel, the co-defendant "was saying that he didn't have any need to kill the victim because he didn't know him," and the co-defendant's testimony "was going to be that it was [Petitioner's] idea to kill him because he could identify him, since that was his great-grandfather." (R. at 64.) Counsel further testified as follows:

> Now, we did–we had a meeting at the city where they gave us–showed us everything they had, the knife, the clothing.
> And then we also asked for another meeting. And at that meeting, Mr. Penny's mother was there and Mr. Penny's sister was there. And they reviewed everything with me.

And each time I met with him, I discussed in terms of what evidence they had. But I think the most damaging evidence would have been the statement of the Co-Defendant. And that is why the pleas were taken as they were taken. And the Co-Defendant was going to put him there. The Co-Defendant was going to testify that but for him he couldn't have gotten into the apartment. . . . By his own admission, but for him they wouldn't have gotten into the apartment.

I think that the issue–I guess his driving issue with him was that who actually made the fatal blow. . . .

(R. at 65-66.)

During cross-examination, when asked whether he ever had a conversation with Petitioner about the fact that Petitioner felt pressured to change his initial statement denying involvement, counsel stated,

Well, I'm sure we discussed it. If I'm not mistaken, I–we discussed that even if he didn't give a statement, even if they didn't have any physical or scientific evidence, I think the problem with the case was the Co-Defendant was going to testify he was there.

(R. at 67.) Counsel was asked whether he recalled if the murder weapon was ever found; counsel said yes. (R. at 69.) PCR counsel showed plea counsel a transcript of the preliminary hearing, which indicated the murder weapon was never found. (R. at 69-70.) Counsel stated, "Maybe I'm mistaken, [but] I thought they had a picture of the knife." (R. at 70.) When asked if he recalled whether there was any blood found on Petitioner, any fingerprints, or any other physical evidence that would have tied Petitioner to the scene of the crime, counsel stated, "I don't recall." (R. at 70-71.)

The PCR court found that Petitioner's testimony was "not credible, while also finding trial counsel's testimony [was] credible." (R. at 85.) Factual findings on credibility are "presumed to be correct"; Petitioner has the "burden of rebutting the presumption . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003); *cf. Wilson*, 352 F.3d at 860 ("These facts do not compel the credibility determination reached by the state court, but they certainly provide sufficient basis, for purposes of section 2254(d)(2), to support such a determination."). Petitioner contends the PCR court's factual findings are unreasonable because there are no facts to support the PCR judge's findings and "[t]here is no evidence to support that Petitioner

15

would have plead [sic] had he been apprised of all the State's evidence." (Dkt. No. 17 at 2-3 of 6; *see also* Dkt. No. 15 at 7 of 23.)

The undersigned disagrees with Petitioner, and recommends granting summary judgment to Respondent as to Ground One. As explained above, "in order to satisfy the 'prejudice' requirement [set forth in *Strickland*], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Court in *Hill* further stated,

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. As we explained in *Strickland v. Washington, supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id*., 466 U.S., at 695, 104 S.Ct., at 2068.

*Hill*, 474 U.S. at 59-60 (citation omitted).

Petitioner has not shown that the state court's adjudication of his ineffective assistance of counsel claim was contrary to, or an unreasonable application of, clearly established federal law; nor has he shown the state court's adjudication resulted in an unreasonable determination of the facts. As noted above, counsel testified the most damaging evidence was the co-defendant's statement. (R. at 65.) Counsel testified that "even if [the State] didn't have any physical or scientific evidence, . . . the problem with the case was the Co-Defendant was going to testify that [Petitioner] was there." (R. at 67.) In addition to the co-defendant's statement, counsel noted that Petitioner gave his own statement indicating that he was present during the crime. (R. at 64-65.) As noted by the PCR court, counsel

testified the dispute between the statement of Petitioner and the statement of his co-defendant centered on who "actually had the knife." (R. at 64-65, 85.)

Here, the only testimony supporting Petitioner's assertion is his following testimony: "I feel that if I would have had my motion of discovery at the time that I was incarcerated at Newberry County Detention Center I would not have plead [sic] guilty to murder or common law robbery." (R. at 60.) Such a bare allegation does not entitle him to relief. The evidence indicates that Petitioner and his co-defendant were able to enter the victim's apartment only because the victim knew Petitioner. (R. at 22-23, 26-27, 64.) Additionally, Petitioner and his co-defendant were seen in the vicinity of the victim's apartment around the time of the murder. (R. at 22.) Furthermore, both Petitioner and his co-defendant gave statements implicating Petitioner in the robbery and murder. On this record, Petitioner has not established that he is entitled to relief pursuant to § 2254. *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (noting that pursuant to *Hill*, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances" (citation omitted)); *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012) (noting that, in order to prove prejudice in the guilty plea context, "[t]he challenger's subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." (citation omitted)); *Meyer v. Branker*, 506 F.3d 358, 368-70 (4th Cir. 2007) (rejecting petitioner's claim "that his trial lawyer's failure to inform him of the consequences of his plea constituted ineffective assistance of counsel" where counsel attested in state court "that she had never informed Meyer of two implications of his guilty plea: (1) that it would serve as an admission of the fact that he acted with premeditation and deliberation and (2) that it would therefore automatically make Meyer's underlying felonies available as capital aggravating factors"; the "State had overwhelming evidence of Myer's guilt and that he acted with premeditation and deliberation," and "Faced with virtually no chance to succeed on the merits at trial, Meyer has not convinced us that an objective defendant would have insisted on going to trial, even if only to contest premeditation and deliberation."); *see also Webb v. Cartledge*, Civ. A. No. 8:09-2057-CMC-BHH, 2010 WL 2231953,

at *3 n.3 ("Without an objective analysis, prejudice could be demonstrated by self-serving allegations. Accordingly, Petitioner must at least demonstrate that his allegation has a plausible foundation in the record. He must make more than a bare allegation that he would have pleaded differently and gone to trial." (internal quotation marks and citations omitted))). Respondent's Motion for Summary Judgment should be granted as to Ground One.

## B.    Ground Two

In Ground Two, Petitioner contends that counsel was ineffective in failing to "prepare, investigate, [or] review [the] case." (Dkt. No. 1 at 7 of 15.) Petitioner states, "Although plea counsel testified he reviewed discovery with Petitioner, counsel knew no pertinent information about Petitioner's case." (*Id*.) Many of the allegations Petitioner raises in Ground Two are similar to the allegations he raises in Ground One. (*See* Dkt. No. 1-1 at 6-11 of 12.) Petitioner complains that "plea counsel never investigated Petitioner's Co-Defendant's criminal history or formulated any form of defense to challenge the Co-Defendant's statement." (Dkt. No. 1-1 at 6 of 12.) Petitioner states,

> Had [counsel] done so, he would have found that Petitioner's Co-Defendant had an extensive criminal record and that the Co-Defendant was on probation at the time the crime was committed. This information might have been used in trial to impeach the Co-Defendants [sic] statement and used to show motive for the Co-Defendant to place the blame of murder on Petitioner.

(*Id*. at 6-7 of 12.) Petitioner points out that, several times during the PCR hearing, counsel testified that he did not recall certain information. (*Id*. at 7 of 12.) He complains that counsel did not challenge his statement as involuntary. (*Id*. at 7-8 of 12.) He again points to the issue of whether the murder weapon was ever found. (*Id*. at 8-9 of 12.) Petitioner asserts counsel was ineffective because he "knew none of the basic information in Petitioner's case." (*Id*. at 9 of 12.)

To the extent Petitioner claims that counsel was ineffective in advising Petitioner that the State had the murder weapon, that claim has been discussed above in Ground One. To the extent Petitioner asserts counsel was ineffective in failing to investigate Culbreath's criminal history, Petitioner presented no evidence at the PCR hearing concerning Culbreath's criminal history; he is therefore not entitled to relief on such a claim. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir.

1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); *see also Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (concluding the petitioner's claim that other evidence should have been presented during the sentencing phase of his trial failed in "the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called," stating, "He claims that his counsel conducted an inadequate investigation to discover persons who would testify in his favor, but he does not advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify.").

Petitioner points to many of counsel's statements during the PCR hearing that counsel did not recall. (*See* Dkt. No. 1-1 at 7 of 12; *see also* R. at 66, 69.) To the extent Petitioner points to testimony about the murder weapon or lack of physical evidence tying him to the crime, that claim has been discussed above. Petitioner also appears to complain that counsel testified at the PCR hearing that he did not recall whether Petitioner gave more than one statement. (Dkt. No. 1-1 at 7 of 12, R. at 66.) Petitioner complains that counsel should have challenged his statements to law enforcement because "[b]oth statements were given by Petitioner while he was a minor, without his parents['] consent." (Dkt. No. 1-1 at 7 of 12.)

The PCR court noted Petitioner's testimony that he "didn't think his statement was voluntary because he made it when he was a juvenile and that it should have been thrown out." (R. at 84.) The PCR court also noted counsel's testimony concerning the voluntariness of the statements as follows: "Defense counsel . . . said that he talked about the voluntariness of the applicant's statement and that the Applicant said law enforcement didn't force him to write it." (R. at 85.) Specifically, counsel testified as follows at the PCR hearing:

> [W]e talked about the statement, but I don't–and he said he was, of course, you know, he was scared.
>    But I do remember asking him, was there anything in there that wasn't true or did they force you to say anything you didn't do.
>    And he said no.

(R. at 66.) The state court concluded counsel was not ineffective because counsel "discussed the possibility of attacking the statement made by the Applicant, [only] to realize that the statement was voluntary." (R. at 85.)

The evidence before the state court indicated that counsel had explored the possibility of arguing Petitioner's statements were involuntary but concluded such argument was meritless. Petitioner did not present any evidence at the PCR hearing to indicate his statements were involuntary, other than the fact that he gave the statements without his parents' consent when he was a juvenile. (R. at 56-57.) Of course, the fact that Petitioner was a juvenile does not automatically mean the statements were involuntary. *See Fare v. Michael C.*, 442 U.S. 707, 727-28 (1979) ("We hold, in short, that the California Supreme Court erred in finding that a juvenile's request for his probation officer was a *per se* invocation of that juvenile's Fifth Amendment rights under *Miranda*. We conclude, rather, that whether the statements obtained during subsequent interrogation of a juvenile who has asked to see his probation officer, but who has not asked to consult an attorney or expressly asserted his right to remain silent, are admissible on the basis of waiver remains a question to be resolved on the totality of the circumstances surrounding the interrogation."); *Williams v. Peyton*, 404 F.2d 528, 530 (4th Cir. 1968) ("Youth by itself is not a ground for holding a confession inadmissible."); *see also In re Williams*, 265 S.C. 295, 300, 217 S.E.2d 719, 722 (1975) ("While the age of the individual is a factor to be taken into consideration, the admissibility of a statement or confession of a minor depends upon its voluntariness, to be determined from the totality of the circumstances under which it is made."). Here, counsel evaluated whether a challenge to the statements would be successful and concluded a challenge was meritless, and Petitioner did not present any evidence at the PCR hearing to indicate his statement was involuntary. *See, e.g., Anaya v. Lemaster*, 202 F.3d 281, at *1 (10th Cir. 1999) (unpublished table decision) (no habeas relief on claim of ineffective assistance of counsel for failing to develop a diminished capacity defense where the state court "determined that defense counsel made a tactical choice not to pursue such an instruction because the evidence was weak and the defense expert concluded that Mr. Anaya's intoxication did not affect his judgment"). Accordingly, to the extent Petitioner contends counsel was

ineffective in failing to challenge his statements to the police, he is not entitled to habeas relief. The undersigned recommends granting summary judgment to Respondent as to Ground Two.

## C.    Motion for Declaratory Judgment (Dkt. No. 17)

Most of Petitioner's Motion for Declaratory Judgment (Dkt. No. 17) is simply a restatement of the Ground One, wherein Petitioner claims that his guilty plea was involuntary due to the fact that counsel told him the State had evidence (the knife and clothing) that the State did not possess. (*See* Dkt. No. 17 at 1-3 of 6.) Petitioner contends there is no evidence to support the PCR judge's findings. (*Id*. at 2-3 of 6.) Petitioner states, "There is no evidence to support that Petitioner would have plead [sic] had he been apprised of all the State's evidence." (*Id*. at 3 of 6.) Petitioner also cited *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), in asserting his "PCR counsel was also ineffective because she failed to insure [sic] that all available grounds . . . were raised in [his] initial PCR collateral hearing." (*Id*. at 3-4 of 6.)[4] Petitioner states, "It has been ruled . . . in *Martinez v. Ryan* that this court can entertain all of these grounds raised in this habeas courpus [sic] because my PCR counselor did not raise these issues like she was supposed to in order to preserve them for review." (*Id*. at 4 of 6.)

The undersigned recommends denying Petitioner's Motion for Declaratory Judgment (Dkt. No. 17). For the reasons set forth above, Respondent is entitled to summary Judgment as to Ground One in the instant § 2254 petition. Moreover, *Martinez* does not appear to have any application in the case *sub judice*. Pursuant to *Martinez*, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315. However, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)); *see also Trevino v. Thaler*, 133 S.

---

[4]Petitioner lists the "available grounds" as follows: "ineffective assistance of counsel, prosecutor misconduct, misabuse [sic] of discretion by the judge, violation of constitution Art 1 § 2 right to petition, + violation of S.C. Constitution Art 1 § 3." (Dkt. No. 17 at 4 of 6.)

Ct. 1911, 1918 (2013). If the ineffective assistance of trial counsel claim "does not have any merit or . . . is wholly without factual support," the procedural default precludes federal habeas review. *Martinez*, 132 S. Ct. at 1319.

   *Martinez* provides no assistance to Petitioner in the instant case because neither of the grounds he raised in his § 2254 petition have been deemed procedurally barred. *See, e.g., Gore v. Crews*, 720 F.3d 811, 817 (11th Cir. 2013) ("Because Gore's claim is not procedurally barred and it does not raise an allegation of ineffective assistance of trial counsel, *Martinez* by its own terms does not, and cannot, excuse his failure to satisfy the exhaustion requirement of § 2254(b)."); *Detrich v. Ryan*, 740 F.3d 1237, 1246 (9th Cir. 2013) ("*Martinez* does not apply to claims that were not procedurally defaulted . . . ."). Moreover, to the extent Petitioner attempts to assert other claims herein (such as prosecutorial misconduct and abuse of discretion by the trial judge), *Martinez* does not apply to those claims, as they are not ineffective assistance of trial counsel claims. *See Gore*, 720 F.3d at 817; *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) ("Under *Martinez*'s unambiguous holding our previous understanding of *Coleman* in this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel."); *Brown v. Warden, Perry Corr. Inst.*, C/A No. 0:12-2988-TMC, 2013 WL 4585415, *6 (D.S.C. Aug. 28, 2013) (finding that *Martinez* cannot provide cause for the procedural default of claims for prosecutorial misconduct or ineffective assistance of appellate counsel). Accordingly, the undersigned recommends denying Petitioner's Motion for Declaratory Judgment (Dkt. No. 17).

## CONCLUSION

It is RECOMMENDED, for the foregoing reasons, that Petitioner's Motion for Declaratory Judgment (Dkt. No. 17) be DENIED. It is further RECOMMENDED that Respondent's Motion for Summary Judgment (Dkt. No. 12) be GRANTED; that the Petitioner's habeas petition be DISMISSED WITH PREJUDICE; and that a certificate of appealability be denied.[5]

IT IS SO RECOMMENDED.

November 22, 2016
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**The parties' attention is directed to the important notice on the next page.**

---

[5]Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).